# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JESUS BAEZA,
TERESA BAEZA MIRALDA, and
JESUS D. BAEZA CONTRERAS,

      **Plaintiffs,**

**vs.**                                      No. 18 CV 00641 JAP/SMV

MARK MUNRO, and
ELI GOMEZ,

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

On March 5, 2018, Plaintiffs Jesus Baeza (Baeza), Teresa Baeza Miralda (Miralda), and

Jesus Baeza Contreras (Contreras) (together, Plaintiffs) brought suit under 42 U.S.C. § 1983

against Hobbs Police Officers Mark Munro (Munro) and Eli Gomez (Gomez) (together,

Defendants) in their official and individual capacities.[1] (FAC ¶ 5.) Plaintiffs claim that

Defendants violated their Fourth Amendment rights in a search of Plaintiffs' residence under a

search warrant issued in an investigation of a murder in Hobbs, New Mexico. (*Id.* ¶¶ 36–37.)

Asserting qualified immunity, Defendants move to dismiss.[2] The Motion is fully briefed.[3]

Because Plaintiffs have failed to show that Defendants violated their clearly established

---

[1] PLAINTIFFS' FIRST AMENDED COMPLAINT (Doc. No. 35) (FAC). Plaintiffs' assertion of claims against Defendants in their official capacities is the equivalent to a suit against the City of Hobbs. *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993) (stating, "for purposes of analyzing a municipality's potential liability under § 1983, acts of municipal department officials in their official capacity are equated with the acts of a municipality itself.").

[2] DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT ON THE BASIS OF QUALIFIED IMMUNITY AND FAILURE TO STATE A CLAIM (Doc. No. 38) (Motion).

[3] *See* PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT ON THE BASIS OF QUALIFIED IMMUNITY AND FAILURE TO STATE A CLAIM (Doc. No. 41) (Response); and DEFENDANTS' REPLY TO RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT ON THE BASIS OF QUALIFIED IMMUNITY AND FAILURE TO STATE A CLAIM (Doc. No. 42) (Reply).

constitutional rights, the Court will grant the Motion.

I.      STANDARD OF REVIEW

Under Rule 12(b)(6) a court may dismiss a claim "for failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is ... to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (citation omitted). In evaluating a Rule 12(b)(6) motion, the court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view the facts in the light most favorable to the nonmoving party." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). However, the court is not required to accept legal conclusions without factual support. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To summarize, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true...." *Twombly*, 550 U.S. at 555.

Although courts usually analyze only facts alleged in a complaint, if a plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claims, the court may consider the documents as part of the pleadings. *GFF Corporation v. Associated Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). *See also County of Santa Fe v. Public Service Co. of N. M.,* 311 F.3d 1031, 1035 (10th Cir. 2002) (in ruling on a Rule 12(b)(6) motion, a court may consider documents referred to in a complaint if the documents are central to the plaintiff's claim and the parties do not dispute authenticity). Plaintiffs attached to the FAC a copy of the SEARCH WARRANT (hereinafter, Warrant), the Affidavit for Search Warrant

(hereinafter, Affidavit), and Attachments A-D (Att. A-D).[4] (See FAC Ex. 1.) In the Motion and Reply, Defendants have also referred to the Warrant, the Affidavit, and Attachments A-D. Attachment A is a description of the premises to be searched. Attachment B is a list of items to be seized. Attachment C is an account of the murder and a description of the exculpatory evidence that Baeza presented to the prosecutor. *Id.* Attachment D is the inventory (Inventory) of items seized under the Warrant. (*Id.*) The Court will consider these documents.

"The doctrine of qualified immunity protects public or government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted). The plaintiff must establish 1) that the defendant violated a constitutional or statutory right, and 2) that the right was clearly established at the time of the defendant's conduct. *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). "If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Hesse v. Town of Jackson, Wyo.,* 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted). If the plaintiff succeeds in carrying his two-part burden, the burden shifts to the defendant who must show there are no remaining material issues of fact that would defeat qualified immunity. *Walton v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014).

---

[4] As Exhibit 2, Plaintiffs attached a photograph of the residence and commercial building located at 115 East Park Place, Hobbs, Lea County, New Mexico. Defendants do not dispute the authenticity of the photograph, which depicts the separate buildings.

## II.     FACTUAL BACKGROUND

Plaintiffs live in a residence located at 115 East Park Place, Hobbs, Lea County, New Mexico. (FAC ¶¶ 3–4.) Baeza operates a vehicle repair business known as LBG Service and Repair, LLC (LBG) in an adjacent commercial building with the same street address. (*Id.* ¶ 3.) Although Miralda and Contreras live in the residence, they are not involved in the operation of LBG. (*Id.* ¶ 4.)

On October 28, 2014, Gary Nash was killed in a drive-by shooting while standing in the driveway of his residence in Hobbs, New Mexico. (*Id.* ¶ 6.) Eye witnesses told police that the shots were fired from a gold Nissan Maxima driven by Jimmy Thompson (Thompson). (*Id.* ¶ 7; FAC Ex. 1 Aff. Att. C.) Thompson, then a juvenile, was charged with murder. (FAC ¶ 7.) Police officials discovered that Thompson's mother, Christina Salazar (Salazar), owned a gold Nissan Maxima. (*Id.* ¶ 9.) Police questioned Salazar on October 29, 2014, and Salazar told police that her car could not have been involved in the shooting because it was at LBG being repaired on the day of the shooting. (*Id.* ¶ 10.) Salazar provided police with the contact information for LBG; however, police did not contact Baeza or LBG at that time. (*Id.* ¶¶ 11–12.)

Prior to Thompson's criminal trial, Thompson's attorney, Barry Crutchfield (Crutchfield), disclosed Baeza as a witness who would testify that LBG had possession of Salazar's gold Nissan Maxima at the time of the murder. (*Id.* ¶ 13.) On July 24, 2016, one week before Thompson's trial, Baeza and Crutchfield went to the Hobbs District Attorney's Office. (*Id.* ¶ 15.) Baeza showed the prosecuting attorney LBG Invoice Number 1012 (Invoice) for repairs on Salazar's vehicle, a gold 2000 Nissan Maxima with New Mexico License Plate 541-RSY. (*Id.* ¶ 16.) The Invoice, marked as paid, showed that the vehicle was repaired from October 6, 2014 through November 10, 2014 at a cost of $2,279.28. (*Id.*)

On July 25, 2016, Gomez submitted the Affidavit and Attachments A-D to State District Judge Mark Sanchez. (*Id.* ¶ 17.) Attachment A described the premises to be searched:

> A single family residence located at 115 East Park Place in the city of Hobbs, County of Lea, State of New Mexico…. The numbers "115" are affixed to the front of the residence and are white in color…. West of the front door is an attached carport with a tan stucco exterior…. East of the residence is a detached sheet metal shop…. There is a garage door which faces north and a glass window just east of the garage door. East of the detached shop is a wooden storage shed which is used as an office…. The entire property is surrounded by a wire fence and several vehicles are parked in front of the shop and storage shed.

(*Id.*; Ex. 1 Aff. Att. A.) The Affidavit notes, "[t]his affidavit shall be filed in the same file as the search warrant. If no criminal proceedings are filed, the affidavit and warrant shall be filed in a miscellaneous file." (*Id.*) Attachment A to the Warrant Affidavit was signed by Gomez and was approved by Assistant District Attorney Erik Scramlin. (*Id.*)

Attachment B to the Affidavit is a description of the items to be seized under the Warrant:

> 1.  Any and all invoices related to a 2000 Nissan Maxima bearing New Mexico license plate 541-RSY VIN: JNCA31D8YT712606
> 2.  Any and all receipts related to a 2000 Nissan Maxima bearing New Mexico license plate 541-RSY VIN: JNCA31D8YT712606
> 3.  Vehicle parts orders related to a 2000 Nissan Maxima bearing New Mexico license plate 541-RSY VIN: JNCA31D8YT712606
> 4.  Computers, laptops, tablets, iPads, and electronic devices used in conjunction with LBG Services and Repair LLC invoicing, pricing and parts management.
> 5.  Data retrieval from the electronic devices used in conjunction with LBG Services and Repair LLC invoicing, pricing, and parts management.
> 6.  Service records and invoices from September 1, 2014 through December 31, 2014 for repairs and services of vehicles.

(FAC Ex. 1 Aff. Att. B.) Attachment B to the Affidavit was signed by Gomez and was approved by Assistant District Attorney Erik Scramlin. (*Id.*)

Attachment C to the Affidavit contains a recitation of the facts supporting issuance of the Search Warrant. After describing the drive-by shooting of Gary Nash and after discussing

witnesses' statements that the car involved in the shooting was a gold colored Nissan Maxima

driven by Jimmy Thompson, the Affidavit stated:

> A records check was conducted and revealed Jimmy Thompson to be associated to a 2000 Nissan Maxima bearing New Mexico license plate 541-RSY. The registration returns to Christina or Cynthia Salazar…. On Thursday, July 21, 2016 Jesus Baeza, proprietor of LBG Service and Repair LLC, produced an invoice number 1012 for repairs on a 2000 Nissan Maxima bearing New Mexico license plate 541-RSY, VIN JN1CA31D8YT712606. Jesus claimed the vehicle was in his possession for repairs from October 6, 2014 through November 10, 2014. Jesus further claimed the vehicle was picked up after the total amount of $2279.28 was paid in full.

> Jesus's claims of being in possession of the vehicle contradict eye witness statements of the Nissan Maxima being at the scene of the shooting.
> …
> The affiant respectfully requests the issuance of this search warrant based on the probable cause stated above and for the items previously mentioned. Any items seized will be used for evidence in support of criminal prosecution.

(FAC Ex. 1 Att. C.) Attachment C to the Affidavit was signed by Gomez and was approved by

Assistant District Attorney Erik Scramlin. (*Id.*)

The Inventory of items seized on July 25, 2016 under the Warrant listed these items: (1) a

black Samsung Laptop from the "NE Bedroom;" (2) a silver HP Laptop from the "NE

Bedroom;" (3) a white HP Laptop from the "NE Bedroom;" (4) an Ipad from the "SE Bedroom;"

(5) a white IPhone from the "Dining Table;" (6) a bluegray IPhone from the "Dining Table;" (7)

a grey IPhone from the "Dining Table;" and (8) a Panasonic Laptop from the "NE Bedroom."

(FAC Ex. 1, Aff. Att. D.) Munro and other officers executed the Warrant, but Gomez was not

present. On the Inventory there is a reference to Hobbs Police Department Report # H14-03571,

and the Defendant is identified as "Jimmy Thompson." No case number for "Jimmy Thompson"

is indicated on the Inventory. (*Id.*)

At the top of the Warrant is a reference to "State of New Mexico v. LBG Service and Repair LLC 115 East Park Place, Hobbs, New Mexico 88240 Defendant(s)." The Warrant also contains number H14-03571 but does not identify the number as a Hobbs Police Department Report number. (FAC Ex. 1.)

Plaintiffs allege that Defendants "obtained a facially deficient search warrant in an attempt to intimidate Baeza for coming forward with exculpatory evidence" in the Thompson case. (*Id.* ¶ 17.) Plaintiffs contend that Defendants "intentionally styled the search warrant as the State of New Mexico v. LBG Service and Repair LLC, although there is no case where the State of New Mexico was adverse to LBG or Jesus Baeza, and there has never been one." (*Id.* ¶ 18.) Plaintiffs further allege that Defendants "intentionally included Plaintiffs' residence in the places to be searched, even though the shop and office of LBG are separate structures." (*Id.* ¶ 21.) Plaintiffs maintain that there is "nothing in the warrant that would create a nexus between LBG and the Plaintiffs' residence located on the property or between any crime and the evidence." (*Id.* ¶ 22.) LBG's principal place of business is published as "115 E. Park Place, Hobbs, NM 88214" on the New Mexico Secretary of State's website.[5] Munro and other officers entered the residence with "weapons drawn." (*Id.* ¶ 23.)

Upon entering the residence, Defendants encountered Miralda and Contreras. (*Id.* ¶ 24.) Plaintiffs allege that Defendants seized every electronic device in the residence, including the personal cell phones of Baeza, Miralda, and Contreras. Notably, the Inventory lists only items located in the residence, and lists no items from the adjacent commercial building. (*Id.* Ex. 1 Att.

[5] *See* https://portal.sos.state.nm.us/BFS/online/CorporationBusinessSearch/CorporationBusinessInformation (accessed April 24, 2019). The Court may take judicial notice of facts contained on public governmental websites. *See Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1212–13 (10th Cir. 2012) (stating that Fed. R. Evid. 201 allows courts to take judicial notice of facts at any stage of a dispute and noting that "the contents of an administrative agency's publicly available files, after all, traditionally qualify for judicial notice[.]").

D.) Plaintiffs argue that the seizure of every device exceeded the scope of the Warrant because Attachment B only allowed the seizure of electronic devices containing LBG records. (*Id.* ¶ 25.) Plaintiffs state that Defendants made no effort to distinguish between electronic devices containing LBG-related data and those that did not. (*Id.* ¶ 27.) Plaintiffs do not allege that it would have been clear which devices were associated with LBG. Nor have Plaintiffs alleged that some of the devices were clearly identified as personal.

III.     DISCUSSION

A.     COUNT I

In Count I, Plaintiffs allege that "no reasonably competent law enforcement officers could have believed the search of Plaintiffs' residence and seizure of Plaintiffs' property was reasonable under the circumstances." (FAC ¶ 37.) Plaintiffs also allege that "[t]he intentional use of a facially invalid search warrant and seizure of property outside the scope of the defective warrant by Defendants was not justified or privileged under clearly established law and constituted an unreasonable search and seizure under the Fourth Amendment." (*Id.* ¶ 38.) The first portion of FAC ¶ 38 states a claim that the Warrant was facially invalid because it did not conform to the particularity requirement of the Fourth Amendment. *Bowling v. Rector*, 584 F.3d 956, 970 (10th Cir. 2009) (noting that the Constitution compels the warrant's description of the items to be seized to be as specific as the government's knowledge and circumstances allow) (citations omitted). The second portion of FAC ¶ 38 alleges that Defendants unlawfully seized items that were outside the scope of the Warrant. This allegation supports a separate claim that Defendants unlawfully executed the Warrant.

1.      Particularity: Place to be searched.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause ... and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment mandates two requirements for search warrants: a warrant must be supported by probable cause of a crime, and it must describe with particularity "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). In other words, a search warrant must "ensure[] that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause." *Mink v. Knox*, 613 F.3d 995, 1010 (10th Cir. 2010) (emphasis in original). *See also United States v. Lucero*, CR 19-138 KG, 2019 WL 1863903, at *9 (D. N.M. Apr. 25, 2019) (unpublished) (finding that a warrant allowing a search of a cell phone for evidence related to a firearm offense met the particularity requirement). This Warrant is somewhat unusual because it authorized the search for evidence in the possession of a witness. Nevertheless, the Warrant authorized a search for evidence related to a specific crime, a murder, for which there was demonstrated probable cause; and the Warrant authorized the search for evidence related to whether a certain vehicle could have been used to perpetrate that crime, the gold Nissan Maxima.

To decide whether a warrant is sufficiently particular, "[t]he fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow[.]" *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (internal quotation marks omitted). However, "the particularity of an affidavit may cure an overbroad warrant[,] … but only where the affidavit and the search warrant…can be reasonably said to constitute one document[.]" *Id.* at 603. To constitute one document, the affidavit and the

9

warrant must be physically connected, and the warrant must expressly incorporate the affidavit by reference. *Id.*

The Warrant (FAC Ex. 1) expressly incorporates the Affidavit by stating, "[a] copy of the Affidavit is attached and made part of this Warrant." (*Id.* at p. 1.) The Warrant also requires officers to serve "this Warrant together with a copy of the Affidavit[.]" (*Id.*) Plaintiffs have not alleged that Defendants failed to serve Plaintiffs with both the Warrant and Affidavit. Therefore, the Court may consider the Affidavit in its analysis of the particularity of the Warrant. *Leary*, 846 F.2d at 603.

The Affidavit describes the premises to be searched as 115 East Park Place, Hobbs, New Mexico. The Affidavit describes two separate buildings at that address: a residence with an attached carport and a "detached sheet metal shop" located east of the residence. (FAC Ex. 1 Att. A.) In addition, the Affidavit describes "wooden storage shed" attached to the shop and used as an office. (*Id.*) Finally, the Affidavit states that the "entire property is surrounded by a wire fence and several vehicles are parked in front of the shop and storage shed." (*Id.*)

A "single warrant may authorize the search of several different places or residences" as long as probable cause is shown for searching each place. *United States v. Langston*, 970 F.2d 692, 703 (10th Cir. 1992) (citing *United States v. Rios*, 611 F.2d 1335, 1347 (10th Cir. 1979)). The Warrant provides probable cause that evidence related to a drive-by shooting, i.e. the car used in that shooting, would be found at 115 East Park Place, Hobbs, New Mexico, which is the address of both the residence and LBG. There are facts within the Warrant linking this address to LBG and there was evidence linking LBG with possession of the gold Nissan Maxima during the crime being investigated. However, Plaintiff has alleged no facts that Defendants should have known which one of the buildings, the residence or the shop, contained LBG's business records.

Nor have Plaintiffs suggested that Defendants searched only the residence. Moreover, Plaintiffs have not challenged Judge Sanchez's finding that there was probable cause to search for LBG records in both buildings. In sum, the Court concludes that the Warrant was sufficiently particular to allow a search of two buildings located at the same address for evidence related to the gold Nissan Maxima. *Langston*, 970 F.2d at 703 (noting that a warrant authorizing a search of buildings located on a large ranch was sufficiently particular).[6]

2.     Particularity: Items to be seized.

This Warrant was also sufficiently particular as to the items to be seized because it directs law enforcement to seize records, including devices containing electronic records, related to the repair of Ms. Salazar's 2000 gold Nissan Maxima. Plaintiffs correctly argue that the Tenth Circuit has cautioned that warrants authorizing the search of computer equipment should be carefully scrutinized for particularity. However, the Tenth Circuit has not ruled that officers must determine at the time of the search whether a particular electronic device contains relevant evidence, as long as the warrant limits the search to items relevant to a particular crime. *United States v. Christie*, 717 F.3d 1156, 1165 (10th Cir. 2013). In *United States v. Riccardi*, the Tenth Circuit held that a warrant was insufficiently particular because it permitted a search of "any and all information, data, devices, programs, and other materials" and did not state the crime for which the evidence was sought. 405 F.3d 852, 863 (10th Cir. 2005). In *Mink v. Knox*, the Tenth Circuit rejected a warrant that authorized a search of "all computer and non-computer equipment and written materials in [the defendant's] house." 613 F.3d at 1011. To satisfy the particularity

_____

[6] In *Langston*, the warrant was found sufficiently particular even though it described the place to be searched as "The Canon Del Agua Ranch" a large ranch in New Mexico because the warrant sufficiently identified the C.A. Ranch "headquarters area." 970 F.2d 692, 704 (10th Cir. 1992). The warrant also provided a geographical description of the headquarters area, along with a general description of nearby structures. *Id.* The Tenth Circuit affirmed the finding that the warrant sufficiently authorized the search of a trailer located in the headquarters area. *Id.*

requirement, a search warrant seeking electronically stored information must be limited "either to evidence of specific federal crimes or to specific types of material." *Christie*, 717 F.3d at 1165.

The Court finds that this Warrant is sufficiently particular. Although the Warrant allowed the seizure of all electronic devices located at the particular address, the Warrant limited the search of those devices to LBG records related to the repair of Ms. Salazar's vehicle. Attachment B clearly specifies in ¶¶ 1-3 that officers were allowed to seize electronic devices that could contain invoices, receipts, and parts orders related to Ms. Salazar's vehicle. Paragraph 4 allows the seizure of computers and other electronic devices 'used in conjunction with [LBG] invoicing, pricing, and parts management." Plaintiffs argue that this paragraph is too broad because it allows officers to seize records related to any time period or vehicle. However, Plaintiffs fail to allege in their FAC or in their Response how this paragraph is insufficiently particular when read in conjunction with all of the other information in the Warrant. *See Christie*, 717 F.3d at, 1165–66 (finding warrant particular when read in common sense fashion as allowing search of computer files for evidence of a particular crime described at beginning of the warrant). For their part, Defendants fail to address this argument in their Reply.

Nevertheless, the language in the Warrant as a whole is sufficiently particular because it specifically describes the place to be searched and items to be seized; and it limits the collection of electronic records to only those relevant to the repair of one vehicle. *United States v. Burke*, 633 F.3d 984, 992 (10th Cir. 2011) (warrant should enable searcher to reasonably ascertain items to be seized to satisfy the particularity requirement).

3.      Particularity: Style of the Warrant

Plaintiffs claim that the Warrant was facially deficient because it referred to a non-existent case: State of New Mexico v. LBG Services and Repair, LLC, and the Warrant used a "fake" case number, H14-03571. Plaintiffs allege that the use of the case title and "fake" case number shows that Defendants designed the Warrant to intimidate Plaintiffs by giving the impression that LBG was under investigation in a criminal case. (Resp. at 4–5.) Plaintiffs admit that the Affidavit contained a detailed description of the Nash homicide and Baeza's possession of an invoice related to the vehicle allegedly involved in the homicide. (FAC ¶ 19.) Nevertheless, Plaintiffs maintain that Defendants' purpose in seeking the Warrant was to intimidate Baeza, "because no good deed should go unpunished." (Resp. at 8.) Plaintiffs also contend that the Warrant gives the impression of a pending case against Baeza and LBG for perjury. (*Id.* at 9.)

The Court cannot find language in the Warrant or the Affidavit from which a person could infer that Defendants intended to charge Baeza or LBG with a crime. In fact, the only crime described in the Affidavit was the murder of Nash, and the Affidavit clearly linked Baeza and LBG only to evidence related to Ms. Salazar's vehicle. (FAC Ex. 1 Att. C.) Viewed in the light most favorable to Plaintiffs, the Affidavit describing the investigative facts related to the Nash homicide and Baeza's possession of relevant evidence would not lead to the conclusion that Baeza or LBG were being prosecuted for a crime. The Warrant did not use a false caption, but it was titled to identify a third party who could have had possession of items relevant to a murder. The Warrant clearly limits its references to Baeza and LBG to possession of evidence related to a vehicle that could have been used in the crime. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the

property to which entry is sought." *United States v. Laliberte,* 308 F. App'x 295, 297 (10th Cir. 2009) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). Third party search warrants are lawful if they otherwise meet the requirements of the Fourth Amendment. *Zurcher*, 436 U.S. at 556 ("Property owned by a person absolutely innocent of any wrongdoing may nevertheless be searched under a valid warrant.").

Plaintiffs further allege that Defendants used a "fake case number" on the Warrant to intimidate Baeza by implying that a criminal prosecution had been commenced against his business. (Resp. at 9.) However, the Inventory contains the same number specifically identified as a Hobbs Police Department Report number. In sum, neither the style of the Warrant nor its identification number cause the Warrant to be facially deficient because the style of the Warrant identified Baeza and LBG as being in possession of relevant evidence, and the number on the Warrant was not "fake." The allegations viewed as true and in the light most favorable to Plaintiffs fail to state a claim that the Warrant was facially deficient, and that claim will be dismissed.

4.      Execution of the Warrant.

Since Gomez prepared the affidavit but did not take part in the search, this claim can be dismissed as to him. As to Defendant Munro, his behavior in conducting the search must have been reasonable from the moment he and the other officers entered the residence until the moment they left. *Lawmaster v. Ward*, 125 F.3d 1341, 1348–49 (10th Cir. 1997). Munro's actions in executing a warrant had to be reasonably necessary to carry out the Warrant's purpose given the totality of the circumstances. *See id.* (finding that leaving cigar ashes in person's bed and leaving person's gun in the dog's water bowl was not reasonably necessary to carry out the warrant's purpose to search for and seize machine guns and parts). In this case, the purpose of

the Warrant was to search for and seize evidence related to the repair of Ms. Salazar's vehicle, which could have been used in a drive-by shooting. *Id.*

Plaintiffs assert that Munro's execution of the Warrant was unreasonable because he and the other officers seized every electronic device in the residence. (Resp. at 6.) The Warrant directed officers to seize only items used by LBG for "invoicing, pricing or parts management." (*Id.*; Aff. Att. B ¶ 5.) According to Plaintiffs, the officers made no effort to distinguish the "computers, laptops, tablets, iPads, and any other electronic devices used in conjunction with LBG invoicing, pricing and parts management, from those items which were not used in conjunction with LBG." (Resp. at 10.) Plaintiffs argue that some of the seized devices were "personal electronic devices belonging to Miralda and Contreras, who had no connection with LBG." (*Id.*)

Defendants argue that the officers acted reasonably in gathering all electronic devices in the residence and the metal shop because both buildings were associated with LBG. Defendants point to the case, *United States v. Hargus*, 128 F.3d 1358 (10th Cir. 1997). In *Hargus*, officers executed search warrants for a suspect's home and business premises for evidence related to a scheme to sell stolen oil from an Oklahoma oil and gas production site. *Id.* at 1361. The district court ruled the warrant was supported by probable cause because the warrant affidavit described items to be seized as "oil transfer reports and daily time sheets provided to the affiant by Mr. Johnson and his employer, indicating that the trafficking in stolen oil had been going on for at least three months." *Id.* at 1362. Mr. Hargus further argued that there was no nexus between the items sought and his home; consequently, the search of his home was unlawful. *Id.* The court stated that "[a] nexus between the objects to be seized and the place to be searched for them is established when the circumstances set out in the affidavit would warrant a person of reasonable

caution to believe that the articles sought would be found at the place to be searched." *Id.*

(citation omitted). The court concluded that

> Here the investigator's affidavit indicated that Mr. Hargus was reached at his
> home when the stolen oil buy was arranged. This fact, together with the nature of
> the small business Mr. Hargus operated and the ongoing conspiracy described in
> the affidavit, made it reasonable for the issuing judge to conclude that the records
> described in the affidavit would be found at Mr. Hargus's house.

*Id.* In this case, Plaintiffs have not directly asserted that the Warrant lacked probable cause.

However, the Court finds that the Affidavit supports the reasonable assumption that evidence

related to the repair of Ms. Salazar's car could be found in the residence or the metal shop

building, both of which had the same street address. Notably, Plaintiffs have not alleged that it

would have been clear to the officers that the devices they were seizing had no connection with

LBG. It is not unreasonable for a person operating a business on the same property as his

residence to store records in either file cabinets or electronic devices located in a nearby

residence. In *Hargus*, the defendant argued that agents exceeded the scope of warrants to search

the defendant's home and business because the officers seized things not specified in the warrant

to search his home. *Id.* at 1363. The officers began their search at the defendant's small business

and then drove to the defendant's home. *Id.* In a desk and file cabinets in the home, the officers

found records related to a conspiracy to sell stolen oil from an oil and gas production site and

officers seized all of the file cabinets. *Id.* The court ruled that the officers did not exceed the

scope of the search warrant: "The officers were authorized to seize ten broad categories of

records, and those records were present in every drawer of both file cabinets….Under these

circumstances the officers did not grossly exceed the warrant in concluding they did not need to

examine at the site every piece of paper in both cabinets." *Id.* Similarly, in this case, Munro was

not required to examine the contents of every electronic device found in the residence to see if

each device contained records related to LBG. Plaintiffs point to no factual allegations that the officers knew or should have known that some of the electronic devices removed from the residence were completely unrelated to LBG.

In *United States v. Wickens*, 1:11-CR-00076-JAP, 2011 WL 13289662, at *6 (D. N.M. Aug. 9, 2011) (Parker, J.), the court upheld a search of two adjacent buildings that had different addresses but which were occupied by one business. *Id.* at * 6. The warrant described two buildings but indicated only one building's address. *Id.* The court found that the search of both buildings was within the scope of the warrant because both buildings were identified in the warrant, the affidavit, and a photograph attached to the affidavit. In this case, the Warrant clearly described two buildings located at the same numerical address, and Judge Sanchez found probable cause to allow the search of both buildings for records related to LBG. Under the circumstances presented here, the Court holds that Plaintiffs have failed to sufficiently allege that Munro exceeded the scope of the Warrant by searching the residence and by seizing all electronic devices located in the residence. Therefore, the Court will dismiss Count I against all Defendants.

## B.      COUNT II

In Count II, Plaintiffs allege that Defendants violated their rights under the Fifth and Fourteenth Amendments by intentionally depriving them of procedural and substantive due process. Specifically, Plaintiffs allege that Defendants intentionally styled the Warrant State of New Mexico v. LBG Service and Repair, LLC, No. H14-03571 "when there is in fact no case where the State of New Mexico is or was ever adverse to LBG or Baeza." (FAC ¶ 42.) Defendants allegedly captioned the Warrant "for the sole purpose of intimidating Plaintiffs[.]" (*Id.* ¶ 43.) According to Plaintiffs, "Defendants intentionally deprived Plaintiffs of procedural

and substantive due process which constitutes a violation of Plaintiffs' Fifth and Fourteenth Amendment rights." (*Id.* ¶ 44.) Defendants ask the Court to dismiss Count II because it is duplicative of Count I. Plaintiffs fail to address this argument in their Response; therefore, the Court may dismiss this claim outright. *See* D.N.M. LR-Civ. 7.1(b). However, the Court will also dismiss this claim under Rule 12(b)(6).

The Fifth Amendment provides, in pertinent part, that "[n]o person shall be … deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. However, the due process clause of the Fifth Amendment protects against due process violations by the federal government. *See Public Utilities Comm'n v. Pollack*, 343 U.S. 451, 461 (1952) (stating that Fifth Amendment applies to and restricts only the federal government); *Marotta v. Cortez*, 08-CV-02421-CMA-CBS, 2009 WL 5491622, at *5 (D. Colo. Nov. 3, 2009) (recommending dismissal of Fifth Amendment claims against City of Denver), *report and recommendation adopted*, 08-CV-02421-CMA-CBS, 2010 WL 582161 (D. Colo. Feb. 16, 2010), *aff'd*, 480 Fed. Appx. 480 (10th Cir. 2012).

Moreover, Plaintiffs' claim that Defendants violated their Fourteenth Amendment rights to due process as applied to the States must be dismissed. Where a more specific provision of the Constitution, such as the Fourth Amendment, governs a claim, plaintiffs may not bring a more general due process claim. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To summarize, Plaintiffs may not argue that due process entitles them to any process greater than that guaranteed by the Fourth Amendment. Consequently, Plaintiffs "may only argue violation of the Fourth Amendment standard of reasonableness." *Marotta*, 2009 WL 5491622, at *6 (subsequent history omitted).

In *Graham*, the Supreme Court stated a plaintiff's claim of an unconstitutional seizure by an officer is properly analyzed under the Fourth Amendment standard rather than under a substantive due process standard. 490 U.S. at 388…. The Court explained: "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id*. at 395.

*Lawmaster*, 125 F.3d at 1351. Thus, the Court will dismiss Count II.

C.    COUNT III STATE LAW CLAIMS

In Count III Plaintiffs state: "As required by Section 41-4-16 of the Tort Claims Act, the Defendants were given timely notice of their claim by letter dated October 21, 2016." (FAC ¶ 46.) Specifically, Plaintiffs allege that Defendants "failed to properly investigate the Nash murder by failing to examine or secure the vehicle the Maxima, which the State claimed was driven by Thompson in the drive by shooting of Nash." (*Id.* ¶ 47.) Plaintiffs further allege that Defendants "obtained a facially invalid search warrant based on incorrect and inaccurate information and presented a warrant to the Honorable Mark Sanchez, District Judge, which reflects a case which did not exist. The fact there was no case styled State v. LBG Service and Repair, LLC was never brought to the attention of Judge Sanchez."[7] (*Id.* ¶ 48.) Next, Plaintiffs allege, "[i]f the actions of Defendants described above were not intentional, reckless or

---

[7] Plaintiffs allege in Count III that Judge Sanchez's issuance of the warrant was unlawful because the information provided to Judge Sanchez was false or misleading. Plaintiffs also suggest that Defendants intentionally chose to present the search warrant application styled as *State of New Mexico v. LBG Service and Repair, LLC* to Judge Sanchez, instead of the presiding judge in the *Thompson* case, "so [Judge Sanchez] would not know whether there was a case against LBG or not." (Resp. at 23.) Plaintiffs aver that Defendants "knowingly provided false information to" Judge Sanchez and somehow violated the NMTCA. (*Id.*) As discussed, however, the number used in the Affidavit, the Warrant and the Inventory was a Hobbs Police Department Report Number. Moreover, Plaintiffs fail to cite to case or statutory law to support their argument that Defendants should have presented the warrant application to the presiding judge in the *Thompson* case. Plaintiffs' assertion that the information on these documents misled Judge Sanchez is merely an unsupported conclusory allegation. *Cf. State v. Bryant*, No. 29,386, 2009 WL 6669334, at *2 (N.M. Ct. App. 2009) (unreported decision) (rejecting argument that issuance of bench warrant by non-presiding judge was improper). In sum, the detailed information provided in the Affidavit belies the assertion that Judge Sanchez was given false information. The Affidavit clearly described that the source of the evidence was from a witness who contradicted other witnesses' testimony. The only crime referenced in the Affidavit was the murder allegedly committed by Thompson.

undertaken with deliberate indifference, they were negligent." (*Id.* ¶ 49.) Finally, Plaintiffs

allege, "[t]hese acts and commissions caused harm to the Plaintiffs and Plaintiffs are entitled to

compensatory damages." (*Id.* ¶ 50.) The allegations quoted above constitute all of the substantive

allegations supporting Count III in addition to incorporating all previous factual allegations. (*Id.*

¶ 45.)

In relevant part, the New Mexico Tort Claims Act (NMTCA), NMSA 1978 §§ 41-4-1–

41-4-30, allows suits against local and state governmental authorities by waiving sovereign

immunity for certain torts:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978
> does not apply to liability for personal injury, bodily injury, wrongful death or
> property damage resulting from assault, battery, false imprisonment, false arrest,
> malicious prosecution, abuse of process, libel, slander, defamation of character,
> violation of property rights or deprivation of any rights, privileges or immunities
> secured by the constitution and laws of the United States or New Mexico when
> caused by law enforcement officers while acting within the scope of their duties.

NMSA 1978 § 41-4-12.

In the Motion, Defendants argue that Plaintiffs have failed to identify which of these

enumerated torts Defendants allegedly committed. Plaintiffs did not address this argument in

their Response. The Court agrees with Defendants. As stated by United States Magistrate Judge

Kirtan Khalsa, "[t]he Court could speculate on this point, reviewing the NMTCA and searching

the record in an attempt to identify what enumerated tort, if any, Plaintiff's allegations might

establish; however, … 'the court cannot take on the responsibility of serving as the litigant's

attorney in constructing arguments and searching the record.'" *Mohammad v. Metro. Court,* CV

16-473 MV/KK, 2017 WL 3172838, at *6 (D. N.M. May 31, 2017) (unpublished) (dismissing

claim for failure to identify enumerated tort that was basis for NMTCA claim), *report and*

*recommendation adopted*, CV 16-473 MV/KK, 2017 WL 6001761 (D. N.M. Dec. 4, 2017)

(quoting *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005)). *See also Perino v. Slaughter*, CV 07-144 LH/WDS, 2008 WL 11411293, at * 2 (D. N.M. Dec. 15, 2008) (unpublished) (dismissing a claim for violation of the New Mexico Constitution stating that the court "will not fabricate a claim under the New Mexico Constitution that was not spelled out in the complaint sufficiently to provide Defendant with fair notice of what the claim is."). Consequently, the Court will dismiss Count III.

IT IS ORDERED that DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT ON THE BASIS OF QUALIFIED IMMUNITY AND FAILURE TO STATE A CLAIM (Doc. No. 38) is granted, and all claims asserted in PLAINTIFFS' FIRST AMENDED COMPLAINT (Doc. No. 35) will be dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE